UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Henry YABLONSKY,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTION AND REHABILITATION, et al.,<br><br>Defendants. | Case No.: 18-cv-1122-CAB-AGS<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 17) AND ON PLAINTIFF'S MOTION TO AMEND THE COMPLAINT (ECF No. 29)** |

An inmate claims that prison law library staff has a habit of reading his legal papers and letters. When he complained, prison officials allegedly engaged in all manner of misconduct against him. The inmate sued, and the officials move to dismiss much of his complaint.

## BACKGROUND[1]

In June 2016, plaintiff John Yablonsky was transferred to Richard J. Donovan Correctional Facility. (ECF No. 4, at 11.) At that time, Yablonsky had "four active cases,"

---

[1] As required at this early stage, this Court accepts "all factual allegations in the complaint as true and constru[es] them in the light most favorable to the nonmoving party." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016). Also, the Court only includes those allegations relevant to the causes of action at issue in the instant order.

1

including "some" with pending "deadlines," so he asked to use the law library. (*Id*. at 11, 15.) He had an Americans with Disabilities Act accommodation that allowed him "two[,] two[-]hour sessions per week because of visual impairments." (*Id*. at 15.)

When Yablonsky requested copies of his legal papers, he witnessed library staff "reading through his legal files page by page." (ECF No. 4, at 12.) He "remind[ed] these parties" that his legal files were confidential. (*Id*.) When the library staff persisted, Yablonsky filed prison complaints and inmate appeals. (*See id*. at 13-15.)

He also wrote defendant McGuire, the prison's litigation coordinator, about it. (*Id*. at 15.) Afterwards, his library access was "reduced to less than one hour per week on some weeks and no a[]ccess on others, while the library allowed access to other inmates from the same yard." (ECF No. 4, at 15.) Also, the Investigations Services Unit "was ordered to enter into plaintiff[']s cell to remove legal files relating to plaintiff[']s active cases and pending research for plaintiff[']s legal interests." (*Id*. at 16.) The "legal files that were taken were to pending cases that had deadlines and specifically a case that had a hearing on November 17, 2016." (*Id*.) McGuire knew "this hear[]ing was pending when she ordered the removal of the files." (*Id*.) Because the "files were taken," Yablonsky "was forced into forfeiting his oral arguments that had been scheduled for this case." (*Id*. at 16-17.)

On April 14, 2017, McGuire "took" some of Yablonsky's "legal mail before it had been handed over to [the Postal Service] for delivery to the sheriff department for service." (ECF No. 4, at 31.) McGuire "placed labels over the mailing address" to "interfere with the delivery of a case" filed against the prison. (*Id*. at 31-32.) Labels were placed "over the addresses so that nobody could see the street address or post office box, knowing that these mailing[s] would be retu[]rned to plaintiff [as] undeliverable." (*Id*. at 37.) Then, after another formal complaint, McGuire conspired with another defendant to trick Yablonsky into withdrawing his appeal through a "bait and switch." (*Id*. at 64.)

At one point, Yablonsky asked another defendant librarian to stop violating his library rights, prompting that staff member to file "a false disciplinary report" against him

in order to "terminate" Yablonsky's "access into the libr[]ary" and to interfere with his active court cases. (ECF No. 4, at 26, 59.)

**DISCUSSION**

Defendants move to dismiss four claims,[2] which are addressed in turn below. To survive a motion to dismiss, a complaint must contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 12(b)(6). But "'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (alterations omitted). Pro se pleadings demand an especially charitable interpretation, but the court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**A. Access-to-Courts Claim**

The Supreme Court recognizes "two categories" of access-to-courts claims: "forward-looking" and "backward-looking." *Christopher v. Harbury*, 536 U.S. 403, 413, 414 n.11 (2002). "Forward-looking" claims—often brought as prisoner class actions—involve "systemic official action" that "frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* at 413. The goal of forward-looking claims is injunctive relief "to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* By contrast, "backward-looking" claims cover "specific litigation [that] ended poorly," or that was never commenced, due to official interference. *Id.* at 413-14. The goal of this species of claim is monetary relief for the prior thwarted lawsuit.

---

[2] Defendants argue that Yablonsky's complaint alleges five causes of action, and they seek to dismiss four. (*See* ECF No. 17-1, at 11; *see also id.* at 7.) This Court does not construe Yablonsky's complaint so narrowly: Yablonsky specifically lists seven causes of action. (*See* ECF No. 4, at 57-66.) This report is limited, nonetheless, to the four specific claims defendants seek to dismiss.

3

18-cv-1122-CAB-AGS

Although Yablonsky does not say which category he is pursuing, his claim is defective under either.

**1.** *Actual Injury*

Both denied-access categories require an allegation of "actual injury"—actually hindering a plaintiff's "efforts to pursue a legal claim." *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). In forward-looking claims, official obstruction amounts to actual injury, for example, when it causes "a complaint [plaintiff] prepared [to be] dismissed" or "so stymie[s]" plaintiff that "he [i]s unable even to file a complaint." *Id.* at 351. In backward-looking claims, the types of harms that qualify as actual injuries include, for instance, "the loss or inadequate settlement of a meritorious case," "the loss of an opportunity to sue," or "the loss of an opportunity to seek some particular order of relief." *Christopher*, 536 U.S. at 414.

The complaint mentions three potential actual injuries. None are sufficient.

(a) *Law Library Access*

First, Yablonsky claims that defendants refused him adequate law library access. (ECF No. 4, at 15.) Prison officials who deny an inmate "access to the prison law library" may violate the "constitutional right to court access" if their actions frustrate the inmate's pursuit of a legal claim, such as "preventing him from filing a brief in support of his appeal." *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). But Yablonsky does not allege that he was deterred from filing legal papers; he claims that he received less law library time than state regulations require. (ECF No. 4, at 15.) This is not actual injury. There is no freestanding constitutional right to law library assistance. *See Lewis*, 518 U.S. at 351 ("[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." (quotation marks omitted)).

(b) *Seized Paperwork*

Next, Yablonsky claims that defendants seized some of his legal "papers until after a crit[]ical oral argument was due," which led him to forfeit his oral argument. (ECF No. 4,

4

at 16-17, 31, 37.) Yet he does not allege that he lost the motion, or that his legal case was hurt in any way. To state a denial-of-access claim, a plaintiff must allege a link between defendants' "constitutional misconduct" and an "adverse disposition" in plaintiff's underlying case. *See Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir. 2005). Yablonsky recounts no such injury here.

(c) *Altered Mail*

Finally, Yablonsky claims that defendant McGuire placed "labels over the mailing address" on certain envelopes to "obstruct[]" delivery of the legal documents in them. (ECF No. 4, at 31-32.) But he does not suggest that he was thereby barred from using these documents in court. Without that sort of concrete harm, Yablonsky again fails to demonstrate actual injury. *See Johnson v. Hornung*, 358 F. Supp. 2d 910, 917 (S.D. Cal. 2005) (holding no "actual injury" from prison staff tossing an inmate's "mail in the trash" because the Supreme Court "accepted Plaintiff's explanation why his petition was late").

### 2. *Remedy*

Yablonsky's potential backward-looking claim faces another obstacle. For this category of claim, he must "identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Christopher*, 536 U.S. at 415. As in *Christopher*, though, the complaint here "failed to identify the underlying cause of action that the alleged [interference] . . . compromised," leaving the Court "to guess at the unstated cause of action supposed to have been lost, and at the remedy being sought" that is different than any relief available in the "other counts set out in the complaint." *Id.* at 417. This is particularly troublesome here, as the access-to-courts claim and the unchallenged retaliation claim both involve the same defendants, same misconduct, and same potential monetary remedy. *See id.* at 421 (rejecting an access-to-court claim that offered the same potential relief as an unchallenged emotional distress claim arising from the same underlying facts).

Thus, the access-to-courts claim should be dismissed with leave to amend. *See Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (holding that a pro se plaintiff

deserves leave to amend unless "the pleading *could not possibly* be cured by the allegation of other facts").

## B. Cause of Action Based on Various California Laws

Defendants move to dismiss a cause of action that Yablonsky supposedly brings under the California Code of Regulations and the California Penal Code. (ECF No. 17-1, at 17.) But Yablonsky asserts no such claim. To be sure, he references many state laws—but he does not base a cause of action on them. (*See* ECF No. 4, at 12-17, 19, 22, 24, 33, 39, 41, 43, 46-48, 50, 52, 68 (citing to 17 state regulatory, penal-code, or prison-manual sections).) These assorted state regulations, instead, form the backdrop for his retaliation claim. Yablonsky argues that library staff seized his legal papers. He complained that this violated state law, and they allegedly responded by reducing his law-library access and filing false disciplinary reports against him. (*Id.* at 13.) At any rate, because Yablonsky does not plead a cause of action under any of the identified statutes or regulations, the motion to dismiss that claim should be denied as moot.

## C. Cause of Action Based on Federal Criminal Law

Yablonsky accuses defendants of covering over the address on his legal mail, in violation of 18 U.S.C. §§ 1700-10. (ECF No. 4, at 62.) Defendants rightly object that those criminal statutes do not give rise to civil liability. (ECF No. 17-1, at 19.) *See Diaz v. City of San Fernando*, No. CV 13-6047 DDP (AJW), 2015 WL 13237402, at *5 (C.D. Cal. June 18, 2015) ("The federal criminal [mail-fraud and tampering] statutes on which plaintiff relies do not provide a basis for a civil liability or expressly create a private right of action . . . ."), *adopted*, 2015 WL 13238926 (C.D. Cal. Aug. 28, 2015). So defendants' motion to dismiss this criminal-law claim should be granted without leave to amend.

## D. Conspiracy Claims Under 42 U.S.C. § 1985(2)

Finally, defendants move to dismiss the § 1985(2) claims of conspiring to deny access to federal and state courts.

6

18-cv-1122-CAB-AGS

### 1. *Federal-Court Access*

The elements of a § 1985(2) conspiracy to deny federal-court access are: "(1) a conspiracy by the defendants; (2) to injure a party or witness in his or her person or property; (3) because he or she attended federal court or testified in any matter pending in federal court; (4) resulting in injury or damages to the plaintiff." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993). Yablonsky's complaint lacks factual support for the third element. He never alleges that defendants conspired against him *because* he attended or testified in federal court. In fact, he never mentions attending or testifying in federal court at all. Thus, he fails to state a claim. *See Ambrose v. Coffey*, No. CIV. S-08-1664 LKK/GGH, 2008 WL 11389033, at *4 (E.D. Cal. Nov. 13, 2008) (granting motion to dismiss § 1985(2) conspiracy to deny access to federal courts because "plaintiff alleges interference with state, rather than federal, court proceedings").

In his opposition, Yablonsky attempts to remedy these inadequacies, attaching various documents, such as mail logs of correspondence with federal courthouses. (*See* ECF No. 21, at 12-13, 105-79.) Even if the Court added these to the complaint—and even if they somehow established Yablonsky's attendance or testimony in federal court—his complaint still fails to allege that the conspirators planned to injure him *because of* his federal-court appearance. His allegations thus still fall short.

### 2. *State-Court Access*

To properly plead a § 1985(2) state-court-access conspiracy, Yablonsky must allege that defendants conspired to obstruct justice in a state-court proceeding due to some "class-based animus." *See Portman*, 995 F.2d at 909. Yet Yablonsky never mentions racial hostility or any other class-based animus. He claims, instead, that defendants blocked his court access to retaliate against him for filing various complaints and lawsuits. (*See, e.g.*, ECF No. 4, at 31 (alleging that his legal papers were seized because Yablonsky "had written library staff up for reading his legal pleadings before[] they made copies."); *id.* at 59 ("[D]efendant Robles did kn[ow]ingly, and intentionally file a false report to get even with plaintiff for exercising his fir[]st amendment access [to] the courts . . . ."); *see also id.*

7

at 15, 25-27, 29-30.) Because Yablonsky does not allege that defendants conspired against him "because he was a member of a protected class," he has "no cause of action for denial of access to *state* court." *See Portman*, 995 F.2d at 909.

Yablonsky seeks to cure this defect by emphasizing that he is in a "protected class" under the Americans with Disabilities Act. (ECF No. 21, at 12.) But it is not enough to belong to a protected class; Yablonsky must plausibly allege that the conspiracy was hatched out of hatred for that class. *See Portman*, 995 F.2d at 909.

Although Yablonsky's current § 1985(2) conspiracy allegations are inadequate, this Court cannot say that "the pleading *could not possibly* be cured by the allegation of other facts." *See Sharkey*, 778 F.3d at 774. So the motion to dismiss should be granted with leave to amend.

**E.     Yablonsky's Motion to Amend the Complaint (ECF No. 29)**

In Yablonsky's opposition, he attached a motion for leave to amend his complaint to add an eighth cause of action, and later filed that motion separately. (*See* ECF No. 21, at 57; ECF No. 29.) Because defendants do not object (*see* ECF No. 27), Yablonsky should be allowed to amend.

## CONCLUSION

This Court recommends that defendants' motion to dismiss be granted in part and denied in part. Specifically, this Court recommends that the District Judge enter the following orders:

1. The denied-access-to-courts claim is **DISMISSED**, with leave to amend.
2. The federal-criminal-law claim is **DISMISSED WITH PREJUDICE**.
3. The 42 U.S.C. § 1985(2) conspiracy claim is **DISMISSED**, with leave to amend.
4. Yablonsky's motion to amend his complaint to add another cause of action is **GRANTED**.
5. Within 21 days of the District Judge's ruling on this matter, Yablonsky must file any amended complaint.

By September 4, 2019, the parties must file any objections to this report. *See* 28 U.S.C. § 636(b)(1). The party receiving any such objection has 14 days to file any response. *See* Fed. R. Civ. P. 72(b)(2).

Dated: August 21, 2019

_____
Hon. Andrew G. Schopler
United States Magistrate Judge