UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Henry YABLONSKY,<br><br>                                    Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>                                    Defendants. | Case No.: 18-cv-1122-AGS<br><br>**ORDER DENYING MOTION TO RECONSIDER (ECF 187 & 194)** |

When assessing whether a court should reconsider an order based on clear error, the decision must strike the Court "as wrong with the force of a five-week old, unrefrigerated dead fish." *Fisher v. Roe*, 263 F.3d 906, 912 (9th Cir. 2001), *overruled on other grounds by Payton v. Woodford,* 346 F.3d (9th Cir. 2003). Plaintiff here complains that the Court made several clear errors in entering summary judgment against him. Because the alleged errors fail to meet this exacting standard, the reconsideration motion is denied.

## BACKGROUND

"Plaintiff John Yablonsky is incarcerated at Richard J. Donovan Correctional Facility," where he sued prison staff for violating "his First Amendment free-speech rights" and for retaliating against him "for filing grievances about these misdeeds." (ECF 185, at 1–2.) Yablonsky accused prison staff of "unconstitutionally burdening his photocopying rights" by reading his legal documents instead of glancing over them for contraband. (*Id.*) This Court found the allegations were either "unfounded" or otherwise "justified by legitimate penological interests," and thus granted summary judgment in favor of defendants. (*Id.*)

Yablonsky filed an objection, which the Court construed as a motion to reconsider. (*See* ECF 185 & 191.)

1

**DISCUSSION**

2
3
4
5

Reconsideration of summary judgment is appropriate only if the court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *See Sch. Dist. No. IJ, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

6
7
8
9
10
11
12

Yablonsky does not try to satisfy the first or third of these options. He did not offer any new evidence in his motion to reconsider or in his reply to defendants' opposition. (ECF 185 & 194.) Nor did he file a signed affidavit attesting under penalty of perjury "what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." *See* CivLR 7.1(i)(1). Yablonsky also does not cite any binding cases dated after the summary-judgment order that would change controlling law.

13
14
15

He argues instead that this Court "failed to identify . . . a dispute about facts" and "improperly identified facts [and] established federal laws." (ECF 187, at 2.) The Court interprets this generally as a clear-error claim.

16

**A.    Recycled Arguments**

17
18
19
20
21

Yablonsky spends most of his motion repeating the same arguments, facts, and case law that this Court already analyzed. "A motion for reconsideration is not an opportunity to renew arguments considered and rejected by the court, nor is it an opportunity for a party to re-argue a motion because it is dissatisfied with the original outcome." *See FTC v. Neovi, Inc.*, No. 06-CV-1952-JLS JMA, 2009 WL 56130, at *2 (S.D. Cal. Jan. 7, 2009).

22
23
24
25
26
27
28

For instance, in his response to defendants' summary-judgment motion, Yablonsky argued that prison staff retaliated against him for filing grievances by (1) "[r]eading Plaintiff's legal documents," (2) "[l]imiting library access," (3) "confiscat[ing his] legal papers," (4) "tricking him into withdrawing a grievance," (5) "tamper[ing]" with his "outgoing mail," and (6) "issuing a Rules Violation Report." (ECF 185, at 11–19.) In Yablonsky's motion to reconsider, he reiterates his retaliation arguments and expresses disagreement with the Court's conclusions. (ECF 187, at 16–24.)

2

The Court already evaluated each claim of retaliation under the *Rhodes* test for First Amendment retaliation. *See Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Because this Court already considered the evidence and arguments regarding retaliation, there are no grounds for reconsideration. *See also Ramser v. Laielli*, No. 15-CV-2018-CAB-DHB, 2017 WL 3524879, at *1 (S.D. Cal. Aug. 15, 2017) ("[W]here the movant is attempting to obtain a complete reversal of the court's judgment by offering essentially the same arguments presented on the original motion, the proper vehicle for relief is an appeal.").

**B.    Clear Error**

A few of Yablonsky's arguments may be construed as a new assertion of plain error. For there to be clear error or manifest injustice, "the reviewing court" must be "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). The standard for clear error is "very exacting" and not easy to reach. *Campion v. Old Republic Home Prot. Co.*, No. 09-CV-748-JMA NLS, 2011 WL 1935967, at *1 (S.D. Cal. May 20, 2011). "Mere doubts or disagreements about the wisdom of a prior decision" do not suffice; the decision must be "more than just maybe or probably wrong; it must be dead wrong." *Id.*

Yablonsky contends that the Court erred by (1) misapplying federal law to find that prison officials have qualified immunity and do not "encroach on First Amendment correspondence rights when they read legal papers . . . before photocopying them" (ECF 185, at 10); (2) relying on defendants' "false" "sworn declarations supporting their defenses" (ECF 187, at 2); (3) "reach[ing] too far" to rationalize the scanning policy (*id.* at 7); and (4) finding that his suggested alternatives to the scanning policy were unreasonable (*id.* at 12).

**1.    *Right to Confidential Photocopying / Qualified Immunity***

Yablonsky's first allegation of clear error involves this Court's conclusion that there is no clearly established constitutional right to confidential photocopying. (ECF 187, at 15.) "The qualified immunity doctrine shields government officials from civil liability

3

so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (ECF 185, at 8 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). In arguing that the right was clearly established, Yablonsky relies on the reversed case of *Casey v. Lewis*, 43 F.3d 1261, 1269 (9th Cir. 1994). In *Casey*, the Ninth Circuit found that allegations of prison staff reading the inmates' legal photocopies sufficed "to state a claim for the denial of meaningful access to the courts" and caused "actual injury."

But the Supreme Court disagreed. It overturned the Ninth Circuit in *Lewis v. Casey*, 518 U.S. 343 (1996). Although the Court's decision does not specifically mention photocopying, it "found actual injury on the part of only one named plaintiff," which stemmed from his "illiteracy," not his inability to confidentially copy his legal documents. *Id.* at 358. So, the Court implicitly rejected any constitutional right to confidential photocopying. *See id*. No court since has suggested that this is an established right.

To the contrary, as explained in this Court's summary-judgment order, other courts have specifically held that there is *no* constitutional right to photocopying. *See Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir. 1983) ("[B]road as the constitutional concept of liberty is, it does not include the right to xerox."); *see also Sands v. Lewis*, 886 F.2d 1166, 1169 (9th Cir. 1989) (rejecting "any constitutional right to free and unlimited photocopying"). Clearly established law must generally come from "controlling authority" or "a robust consensus of cases of persuasive authority." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (cleaned up). As of today, courts have not established a constitutional right to photocopying, much less confidential photocopying. One day this may change. But as the law currently stands, the right is not clearly established "beyond debate." *Id.* at 741. So, the Court's conclusion about qualified immunity was not clearly erroneous.

### 2.  *Reliance on "False" Declarations*

Yablonsky claims that the Court's summary-judgment order was "tragic" because it relied on "defendants['] sworn declarations supporting their defenses," which "were false." (ECF 187, at 2.) Yablonsky also raised this issue in his supplemental brief responding to

4

defendants' summary-judgment motion, claiming that defendants "based their motion upon declarations that are patently false." (ECF 178, at 2.) He only mentions one defendant's declaration (Blahnik's) and alleges instances when defendants were "not truthful." (*Id.*)

Several of the falsehoods Yablonsky cites are his own misinterpretations or misunderstandings, not material facts. For example, Yablonsky states that Blahnik "suggests that [library] ducats will not accompany medical that same date," so he "was not truthful." (*Id.*) Yablonsky then refers to medical and library appointment slips dated the same day, as evidence of a falsehood. (ECF 177, at 485.) But Blahnik never claims that it is impossible to have both appointments in the same day—only that *one* of the reasons "an inmate may not attend a scheduled library appointment" is because "the inmate has a *conflicting* medical appointment." (ECF 168-3, at 2 (emphasis added).)

Other alleged falsehoods regard opinions about the staff's diligence. For instance, Yablonsky disputes Blahnik's "declaration that staff 'work hard' to make certain that access is available." (ECF 178, at 3.) By way of impeachment, Yablonsky notes that an inmate named Irvin Basquez was not allowed access to the law library. (*Id.*) It is not clear that this anecdote categorically refutes Blahnik's statement, especially since his declaration doesn't mention Basquez. But even if this Court disregarded Blahnik's assertion about the staff's hard work—or ignored Blahnik's declaration entirely—it would not materially change the legal analysis of Yablonsky's constitutional claims.

In short, nothing Yablonsky offers suggests that the declaration is "patently false" or makes the Court's mention of that evidence in its summary-judgment ruling clear error.

### 3. *Scanning-Policy Justification*

Yablonsky asserts that the penological reasoning the Court provided for the scanning policy's purpose is illogical. In its order, this Court rejected Yablonsky's facial constitutional challenge to the scanning policy, concluding that it had a rational basis. In particular, the Court held as legitimate the declared goals of the policy, including reducing the distribution of contraband—such as child pornography and gang-related designs—and deterring the bullying of poorer inmates by better-funded ones. (ECF 185, at 3–5.)

Yablonsky claims that it is "too far reaching speculation" that an inmate would photocopy child pornography because "an inmate who wished to copy child porn would be killed before he set his head upon a pillow that night if he were 'THOUGHT' to have child porn ideas much less a picture?????" (ECF 187, at 7.) Yablonsky contends that tattoo and pornography books "are permitted," implying that the goal of censoring inflammatory materials is without merit. (*Id*.) Yablonsky also maintains that the Court's "indication that inmates are bullied into making copies for someone who has money on their books trying to avoid the expense is too far to comprehend." (ECF 187, at 13.) "The idea that they are making sure I am safe fails," he contends, because "I am 6 foot and 240 pounds and have not lost a fight on this yard yet!" (*Id*.)

But to satisfy the rational-relationship inquiry, prison officials need not "prove that problems occurred in the past or are likely to occur in the future." (ECF 185, at 4 (citing *Prison Legal News v. Ryan*, 39 F.4th 1121, 1132 (9th Cir. 2022)).) Even though Yablonsky disagrees with the need to further these penological goals, it "is enough that officials might reasonably have thought that the policy would" advance "the jail's interests." *Id*. Besides, defendants offered evidence to prove past instances of inmates hiding such contraband in legal documents and coercing indigent inmates into making copies for others. (ECF 195, at 4–5.) Whether it has happened to Yablonsky himself is inconsequential.

### 4. *Alternatives to Scanning Policy*

Yablonsky points to multiple alternatives to the current policy of visually scanning documents, such as "shaking the documents, fanning them out, scanning them upside down, reviewing the copy machine memory after photocopying, or immediately sealing the copies in envelopes to be mailed from the library." (ECF 185, at 7.) These proposals, he claims, would protect the confidentiality of his documents. (*Id*.) Yet this Court decided that these options "do not accomplish the identified goals of suppressing inflammatory materials, protecting indigent inmates, and preserving prison resources," so the lack of "ready alternatives supports the scanning policy's reasonableness." (ECF 185, at 8 (cleaned up).)

Yablonsky strongly disagrees with the Court's reasoning. He asserts that the direct mailing "practice is used at other institut[]ions" and that "if an inmate tru[]ly wished to keep these papers hidden," the inmate "would take them into the law library restroom and shove them into his anus, which staff will reject searching." (ECF 187, at 12.) But as previously stated, this alternative fails to address "the prison's last goal: discouraging well-off inmates from bullying poor ones into making photocopies, to dodge copying fees." (ECF 185, at 8.) Simply disagreeing with the Court's reasoning does not prove clear error.

## CONCLUSION

As there are no new facts, changes in case law, nor evidence of clear error in the Court's summary-judgment decision, Yablonsky's motion to reconsider is **DENIED**.

Dated:  September 18, 2023

_____
Hon. Andrew G. Schopler
United States District Judge